[Crim. No. 3333. Second Appellate District, Division Two.—May 28, 1940.]

THE PEOPLE, Respondent, v. BEATRICE MALLETTE, Appellant.

Henry Haves for Appellant.

Earl Warren, Attorney-General, and Alberta Belford, Deputy Attorney-General, for Respondent. :

MOORE, P. J.—This is an appeal from a judgment of conviction of murder in the first degree and from an order denying a new trial. Defendant was accused of the murder of her husband on May 28, 1939. After entering her plea of not guilty and not guilty by reason of insanity, the court appointed three psychiatrists as a commission to examine her. At the hearing held on August 7, 1939, the court without a jury determined that the defendant was "insane at the present time", committed her to the hospital for the criminally insane at Talmadge and suspended further proceedings. On December 6, 1939, defendant having been returned to the custody of the sheriff, the cause was reset for trial and the same psychiatrists were required to examine and report as to her sanity as of the date of the homicide.

On January 9, 1940, the jury was impaneled and the trial proceeded upon the issue raised by the plea of not guilty. Two days later the jury returned a verdict of guilty of murder in the first degree with a recommendation of life imprisonment. The same jury thereupon proceeded to try the issue of "not guilty by reason of insanity". On the following day, the jury returned its verdict that the defendant was sane at the time of said homicide. On January 16, 1940, defendant's motion for a new trial upon the statutory grounds was denied, whereupon the court sentenced the defendant in accordance with said verdict.

On this appeal defendant urges especially two points, namely: (1) The court committed prejudicial error in commenting to the jury upon the significance of the commitment (exhibit B) of the defendant to the said state hospital on the 7th day of August, 1939; (2) the prejudice caused by the statement of the district attorney in his closing argument in which he commented upon said statement made by the court on receiving said exhibit B and misstated the result of the jury's determining her insane.

On receiving in evidence said commitment to the hospital for the insane, the court said: "let the jury consider the fact that there was an adjudication on the point on the day of August 7, 1939, . . . the sole question before the court at that time being whether in the opinion of the court, the

defendant was in sufficient frame of mind or the proper frame of mind to cooperate with her counsel in the preparation of her defense, under which circumstances it was the duty of the court to commit the defendant until such time as she might be in sufficient mental state to cooperate in presenting her defense. *At most it was merely an adjudication of the state of mind on August 7 or thereabouts and was not a finding as to her sanity or insanity on May 28, 1939.''* Under the circumstances, this statement of the court was prejudicial and was not cured by anything that followed. The purpose and the office of the exhibit was to give proof of the insanity of defendant on the day on which the offense was committed.

It is rarely possible to find satisfactory witnesses as to the state of mind of a person accused of a heinous crime as of the date of the offense. For this reason, it is proper for the court and the jury to hear and consider evidence of insanity at times prior to the trial of the accused because such evidence has a tendency to prove the insanity at the time of the crime. ''Where the insanity sought to be proved is of a temporary character or interrupted by lucid intervals, which is apt to be the case where it results from personal injuries acted upon by casual and exciting causes, a wider range on the score of time should be allowed to the testimony than in cases where the insanity is of a more continuous and permanent character, and therefore its periods of commencement and termination more clearly defined and readily ascertained. But from the nature of the case no fixed rules as to the period of time over which an inquiry of this character should be extended can be established, and hence the particular conditions of each case must be allowed to fix the limits. To allow a wide range is certainly in keeping with the humanity of the law, which always prefers the escape of the guilty to the punishment of the innocent.'' (*People v. Farrell*, 31 Cal. 576, 582.) Defendant's insanity at the time of the trial is admissible for the limited purpose of proving prior insanity. (*People* v. *Kirby*, 15 Cal. App. 264 [114 Pac. 794].) The facts relative to the homicide, excluding the question of her insanity, could hardly have resulted in any verdict other than that of ''guilty''. Following her conviction of the crime, the same jury was impaneled to try her sanity. The evidence received upon that issue indicates a close contest. It certainly did not greatly preponderate in favor of her sanity.

Dr. W. H. Worley testified that six months prior to the homicide, the defendant was "delusional and was suffering from a mental disorder that was rather progressive in type". Dr. Gustave F. Boehme testified that six months prior to the homicide the defendant was mentally sick and probably suffering from "some delusional and paranoic state, which the woman apparently suffered from during this long period of time". Dr. Victor Parkin testified that on the day of the homicide defendant was sane but she was not normal mentally; that she was a very neurotic woman for a good many years. In making his examination, he learned from her that she had been an invalid for many years; that she had suffered a miscarriage which began her invalidism, that she had gone from doctor to doctor and from hospital to hospital to have her health restored without any success; that she had had her uterus removed; that she had visited the Mayo Clinic where she was advised that she had various disorders including a serious condition of her pancreas; that she had inflammatory adhesions, a gastric ulcer, premature menopause, chronic cystitis with strictures of the ureters, weak kidneys and a growth on her urethra; that by reason of said ills, she had been confined to her home a great part of her married life; that during the past seven years she had spent most of the time in bed listening to the radio; that her early married life was happy; that some years ago, her husband tired of her invalidism, took to drink, neglected and quarreled with her. Dr. Rappaport, the fourth psychiatrist, testified that while he believed the defendant sane, yet she was suffering from a psychoneurosis. This testimony of the psychiatrists cast a serious doubt upon her sanity. It was emphasized by the history of her case, corroborated by the observations of a number of lay witnesses. The evidence of the treatment that she had received at the hands of her husband in any view we take of it gives further proof of her mental disorders. If he had been kind to and patient with her during the years of her illness, then her state of mind on the day of the homicide and subsequently when she believed he had mistreated her would indicate a delusional state. On the contrary, if she had been made wretched by the abuses at his hands during the long period of her illness, then the suffering to which she was subjected was calculated to add to her mental disease.

In this situation the court's comment on admitting the insanity commitment was calculated to forestall the jury's deliberate consideration of the court's determination on August 7th. It should have been received as a circumstance in the chain of the prisoner's proof without the court's depreciating its value.

Defendant had the right to have the jury consider the commitment issued on August 7, 1939, for the purpose of drawing an inference that she was insane on May 28, 1939, but the statement of the court tended to prevent the drawing of such an inference by the jury. Moreover, the trial judge erroneously stated the issue which was determined at the hearing on August 7th when he said that the sole question before the court was "whether in the opinion of the court the defendant was in sufficient frame of mind or the proper frame of mind to cooperate with her counsel". On August 7th the question before the court was whether defendant was *mentally deranged to such an extent as to be incapable of appreciating her situation* and making any legal defense that she might have. (*People* v. *Lawson,* 178 Cal. 722, 726 [174 Pac. 885].)

 An additional ground for reversal is found in the oratorical display of the prosecuting attorney. In his closing remarks to the jury he said: "as the Court told you yesterday that was only a finding of the Court from the evidence that was presented to him at the time as to the condition of the defendant at the particular time, and it was not in any way a finding whether or not the defendant was or was not insane on the 28th of May. . . . A plea of not guilty by reason of insanity is equally a trial of the case, because if the defendant should be found insane at the time of the commission of the offense that is a finding that she is not guilty of the crime, because *it is a theory of our law that an insane person can not commit a crime, so the crime requires the operation of a sane mind, and therefore she will walk out free if you find she was insane at the time of the commission of the offense*". These remarks were wholly out of place and their effect could not be cured by the subsequent order of the court in striking them. The jury had just convicted her of murder. After said remarks, they could not but have reasoned that if they found her insane they would turn loose

upon the community a dangerous person capable of doing much mischief. The statement appealed to a deeply rooted sentiment and could not be erased by any admonition of the court. The instinctive reaction of a socially minded person to the picture of her "walking out a free woman" is too well understood to require further elucidation. Moreover, after the remarks of the district attorney had left before the jury a vision of the defendant at large in society, the court declined to explain to the jury that a finding of insanity would require defendant to be confined in the state hospital for the criminally insane in accordance with the provisions of section 1026 of the Penal Code. This, he should have done, in view of the remarks of the district attorney.

In view of the state of the evidence, of the narrow margin upon which a conviction was predicated, we are of the opinion that the comment of the court, together with the remarks of the prosecutor resulted in an unfair trial of the defendant.

The judgment is reversed and the cause remanded for a new trial on the issue of defendant's plea of not guilty by reason of insanity.

Wood, J., and McComb, J., concurred.