[Crim. No. 3527.   Third Dist.   Dec. 7, 1964.]

THE PEOPLE, Plaintiff and Respondent, v. BELMONT ANDREW SORENSON, Defendant and Appellant.

---

*Assigned by Chairman of Judicial Council.

Henry J. Goff, Jr., under appointment by the District Court of Appeal, for Defendant and Appellant.

Stanley Mosk and Thomas C. Lynch, Attorneys General, Doris H. Maier, Assistant Attorney General, and Daniel J. Kremer, Deputy Attorney General, for Plaintiff and Respondent.

FRIEDMAN, J.—Defendant was charged with three counts of passing bad checks in violation of Penal Code section 476a. He pleaded guilty to the charges and entered a plea of not guilty by reason of insanity. A jury trial was held on the question of insanity and defendant was found to be legally sane. After denial of his motion for new trial, he was sentenced to state prison. He appeals from the judgment.

Defendant took the stand and testified to a history of bad check offenses for which he had served prison terms in the State of Washington. Before the trial he had been examined by two court-appointed psychiatrists: Dr. E. W. Klatte, medical superintendent of Mendocino State Hospital, and Dr. Joseph E. O'Neill, a member of the hospital staff. Dr. O'Neill testified as a defense witness. He stated that in his opinion defendant suffered from manic depressive psychosis, a mental disease marked by extreme variations in mood, ranging from elation to depression. According to Dr. O'Neill, the elated or manic episode may manifest itself in a tendency to enter into grandiose financial schemes, the sufferer feeling himself to be a man of wealth capable of great things. Dr. O'Neill held the opinion that when defendant was having one of these "spells" he was incapable of understanding the consequences of his actions. He was of the opinion that defendant was passing through a

manic phase of his psychosis at the time he passed the three checks. He characterized the disease as a permanent and recurring condition, but with periods of normality. He testified that defendant was relatively normal at the time of the trial.

Upon cross-examination Dr. O'Neill admitted that his diagnosis was based solely on facts given him by defendant; he considered, however, that his analysis was valid, that defendant had not suggested it and it was discovered only after extensive examination. He admitted that the analysis could be mistaken or that another doctor might disagree with it. He refused to express any view as to whether or not defendant's condition at the time of the offense conformed to the legal definition of insanity.

Both sides stipulated that Dr. Klatte's testimony would be substantially the same as Dr. O'Neill's.

Aside from cross-examination of Dr. O'Neill, the state did not present any medical evidence in rebuttal. The prosecution called a bank official, who testified that defendant had opened a checking account with a $15 deposit shortly before passing the checks in question. Two business persons who had accepted defendant's checks testified that they had noticed nothing unusual in defendant's demeanor or conversation.

On appeal, defendant contends that the prosecutor was guilty of prejudicial misconduct in his closing argument to the jury. The statement assigned as misconduct was the following: "I think Mr. Sorenson is very well aware of what happens if you break the law and you get caught; certainly by now he should know. So what do we do this time? We go around the hill again, tried the same thing, by golly, we get caught and we tried this other road before, and it doesn't work so now let's have a new plea, let's try something different, nothing worked before, let's try a plea of insanity this time. 'If I am going to be confined for anything at all, let's make it some time in the hospital instead of jail.' If the doctor feels he is not in one of these states of being manic depressive this particular minute, this turns him loose."

Defense counsel did not object to the statement and the jurors were not admonished to disregard it. The statement was obvious misconduct. The statutory function of the jury was to decide "the question whether the defendant was sane or insane at the time the offense was committed. . . ."

(Pen. Code, § 1026.) Defendant's immediate or ultimate destination—whether state hospital, state prison or to be "turned loose"—was a judgment which the law reposed in other hands than the jury's.* The prosecutor's statement was a thinly disguised appeal to the jurors to abdicate their lawful role and to decide the issue of sanity in terms of their own opinion that imprisonment, not hospitalization, was defendant's proper fate. In effect, the district attorney was urging the jury to usurp functions reposed by statute in other hands. The statement was an appeal to prejudice, an attempt to arouse aversion toward a verdict which might "turn him loose" to victimize innocent people with more bad checks. Finally, the argument misstated the law, telling the jury that after defendant's commitment to a state hospital, "the doctor" could release him. Penal Code sections 1026 and 1026a, to the contrary, prevent the release of a defendant without a judicial hearing and a finding of restoration to sanity.

Similar prosecution arguments in the course of insanity trials have been categorized as misconduct. (*People* v. *Castro,* 182 Cal.App.2d 255 [5 Cal.Rptr. 906]; *People* v. *Johnson,* 178 Cal.App.2d 360 [3 Cal.Rptr. 28]; *People* v. *Mallette,* 39 Cal.App.2d 294 [102 P.2d 1084].)

█ A more serious problem is whether the absence of objection in the trial court precludes defendant from urging the misconduct. █ Generally misconduct of the district attorney will not be ground for reversal where no objection was made, or where after objection the trial court adequately admonished the jury. █ There are two exceptions to the rule: "One is where the case is closely balanced and there is grave doubt of defendant's guilt, and the acts of

*Penal Code section 1026 provides in part: ". . . If the verdict or finding be that the defendant was sane at the time the offense was committed, the court shall sentence the defendant as provided by law. If the verdict or finding be that the defendant was insane at the time the offense was committed, the court unless it shall appear to the court that the defendant has fully recovered his sanity shall direct that the defendant be confined in the State hospital for the criminal insane, or if there be no such State hospital, then that he be confined in some other State hospital for the insane. If, however, it shall appear to the court that the defendant has fully recovered his sanity such defendant shall be remanded to the custody of the sheriff until his sanity shall have been finally determined in the manner prescribed by law. A defendant committed to a State hospital shall not be released from confinement unless and until the court which committed him, or the superior court of the county in which he is confined, shall, after notice and hearing, find and determine that his sanity has been restored."

misconduct are such as to contribute materially to the verdict, a miscarriage of justice results requiring a reversal. . . . The other exception is where the act done or remark made is of such a character that a harmful result cannot be obviated or cured by any retraction of counsel or instruction of the court. In such cases the misconduct will furnish ground for a reversal of the judgment, even where proper admonitions are given by the court.'' (*People* v. *Lyons*, 50 Cal.2d 245, 262 [324 P.2d 556]; see also *People* v. *Perez*, 58 Cal.2d 229, 247 [3 Cal.Rptr. 569, 373 P.2d 617].)

In *Mallette* and *Johnson*, the court held that prejudice arising from similar argument could not be erased by admonition. These were individualized decisions, reached in the light of the particular record before the appellate court. We think the ''close case'' exception applies here. As we understand that exception, it simply means that when the evidence is closely balanced, the appellate court will proceed to exercise its power under article VI, section 4½ of the State Constitution to declare that the misconduct caused a miscarriage of justice, regardless that defense counsel failed to object in the trial court.

A plea of not guilty by reason of insanity is a denial of criminal guilt. (*People* v. *Wells*, 33 Cal.2d 330, 349-350 [202 P.2d 53].) Thus, when misconduct occurs in the course of an insanity trial, the ''close case'' exception will apply where the evidence on the issue of sanity is closely balanced and there is a grave doubt as to the defendant's sanity. Moreover, the exception should apply with increased vigor where the evidence gravitates in the defendant's favor.

In the present case, the only medical evidence was that presented by the defense. Although not compelling, that evidence strongly tended to support a verdict of legal insanity. The prosecution might have produced contrary medical evidence (Pen. Code, § 1027), but did not do so. It sought only to weaken the defense medical evidence by cross-examination. The rebuttal evidence of the prosecution was meager enough. Two lay witnesses testified to defendant's seeming appearance of normality. Somewhat more significant was the testimony that defendant had opened a bank account with a small deposit shortly before passing the checks, an act more consistent with careful planning than insanity. The prosecution did have the support of

94

the presumption of sanity. (*People* v. *Baker*, 42 Cal.2d 550, 564 [268 P.2d 705].) Whether the evidence was "closely balanced" or gravitated in favor of the defense, there is a grave doubt as to defendant's sanity at the time of the offense and thus as to his guilt. In view of this condition of the evidence, it is likely that the unsuppressed impropriety of the district attorney materially influenced the verdict. We conclude that a miscarriage of justice occurred.

Other assignments of error require no comment. The judgment is reversed and the cause remanded for a new trial on the issue raised by defendant's plea of not guilty by reason of insanity.

Pierce, P. J., and Van Dyke, J.,* concurred.

A petition for a rehearing was denied January 6, 1965, and respondent's petition for a hearing by the Supreme Court was denied February 3, 1965. Mosk, J., did not participate therein.

*Retired Presiding Justice of the District Court of Appeal sitting under assignment by the Chairman of the Judicial Council.