Filed 12/2/20  P. v. Black CA1/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| THE PEOPLE,<br><br>　　　　Plaintiff and Respondent,<br><br>v.<br><br>RANDY D. BLACK,<br><br>　　　　Defendant and Appellant. | A157331<br><br>(San Francisco County<br>Super. Ct. No. SCN225591) |

A jury convicted appellant Randy D. Black of one count of robbery and one count of attempted robbery.  On appeal, he argues that the trial court abused its discretion in denying his motion for a mistrial after a sheriff's deputy disclosed to the jury during deliberations that appellant was being housed in a "psych unit."  He also contests the court's partial denial of his motion to strike two prior felony convictions under our "Three Strikes" law. We find no merit to these claims and affirm the judgment.

### FACTUAL AND PROCEDURAL BACKGROUND

#### A.    *The Underlying Offense*

On the evening of February 7, 2016, Co Lu left his work in San Francisco and walked to a nearby bus stop on Bryant Street.  Lu was carrying his backpack, which contained no valuables.  As he approached the bus stop, Lu noticed a man already seated on the bench inside the bus shelter.  The man was much larger than Lu, who is five feet three inches tall

1

and weighs around 110 pounds. Lu sat a few seats away and placed his backpack on the ground. He took his cell phone from his pocket and began checking his messages. At some point, he raised his hand to his face and coughed.

As Lu perused his phone, the larger man suddenly approached and started punching him on the head, neck and shoulder. Lu tried to run away but fell face down on the sidewalk as the man continued to hit him. While on the ground, Lu felt the man reaching for his wallet in his left front pants pocket. Lu clasped his own hand over his pocket to maintain control of his wallet as he struggled to get up. The man managed to remove from Lu's rear pockets some small pieces of paper, which he threw to the ground.

Douglas Daily was driving down Bryant Street when he saw the attack in progress. Daily honked his horn while his passenger yelled out and motioned for Lu to get in the car. Lu ran to the car and got inside. The attacker picked up Lu's backpack and swung it at the car, leaving a large dent. The assailant then opened the backpack and dumped everything on the ground. Daily drove off while his passenger called 911. As he made a U-turn, he saw the attacker strike another man who then ran away.

Officer George Tano was dispatched to the crime scene. Another witness pointed out the suspect, who was later identified as appellant. A video of the incident captured by a nearby surveillance camera was played for the jury. Lu later recovered his backpack and the papers taken from his pockets.

Following the incident, appellant was charged in a second amended information with second degree robbery (Pen. Code,[1] § 211; count one), attempted second degree robbery (§§ 664/211; count two), assault with force

_____

[1] All further statutory references are to the Penal Code.

2

likely to cause great bodily injury (§ 245, subd. (a)(4); counts three and four), and misdemeanor vandalism (§ 594, subd. (b)(2)(A).) The information also alleged that appellant was ineligible for probation (§ 1203, subd. (e)(4)), that he had suffered two prior strike convictions (§§ 667, subds. (d) &(e), 1170.12, subd. (c)), and that he had two serious prior felony convictions (§ 667, subd. (a)(1)).

## B.    *Appellant's Competency and First Trial*

In July 2016, the trial court suspended proceedings and ordered a competency evaluation. Appellant was found incompetent to stand trial and was committed to Napa State Hospital in December 2016. In March 2017, the trial court found competency had been restored and reinstated criminal proceedings. Appellant pleaded not guilty to all counts.

Appellant was tried twice in this matter. His first trial commenced in May 2017, resulting in guilty verdicts on counts three, four, and five. The trial court declared a mistrial as to counts one and two after the jury was unable to reach a verdict. A retrial on counts one and two commenced in June 2018.

## C.    *Appellant's Second Trial*

The prosecution presented evidence of the underlying offense described above. Appellant did not offer evidence in his defense. Defense counsel argued in closing that appellant was not guilty of robbery or attempted robbery because he lacked the specific intent to permanently deprive Lu of his property. He suggested that appellant's assault on the victim was prompted by his underlying emotional issues and a delusional perception that Lu had intruded on his space and behaved disrespectfully when he coughed. Counsel also asserted that appellant did not steal Lu's backpack, arguing he only used it to hit Daily's car.

3

On July 11, 2018, the jury found appellant guilty as charged on counts one and two. The trial court found the charged enhancements true at a subsequent bench trial. On May 17, 2019, the trial court granted appellant's *Romero*[2] motion to dismiss a 1990 conviction for first degree robbery, but denied his request to dismiss a 2005 conviction for armed bank robbery. Appellant was sentenced to an aggregate term of 17 years in state prison. This appeal followed.

## DISCUSSION

## I. Jury Misconduct Claim

During deliberations, the trial court learned through a jury note that a sheriff's deputy had relayed to the jury that appellant was being held in a "psych unit." Appellant contends that the trial court prejudicially mishandled the proceedings by failing to interview individual jurors to determine whether any juror was affected by the misconduct and by denying his motion for mistrial. He further asserts that the court's limited inquiry into the matter and corrective action failed to dispel the "presumption of prejudice." We find no error in the trial court's handling of the jury note or the denial of mistrial.

### a. *Relevant Proceedings*

During deliberations, the sheriff's deputy charged with supervising the jury relayed to the jurors that appellant was housed in the "psych unit." Shortly thereafter, the jury sent a note to the court stating: "We have become aware that the defendant is being held in a psych unit. We have taken a poll of the room and don't believe that this changes any of our minds because we all feel capable of ignoring it."

---

[2] *People v. Superior Court (Romero)* (1996) 13 Cal.4th 497 (*Romero*).

When questioned by the trial court, the sheriff's deputy stated that he had entered the jury room to answer a question about the cutoff time for deliberations and returning a verdict. The deputy reported to the court that he told the jurors, " 'You know, it takes a long time to get a person down. This guy is kind of a mental person and he's in the psych unit,' which I should not have stated." The deputy expressed embarrassment about what he had said and he informed the court that appellant was not housed in a psych unit but was rather in an administrative segregation unit. He explained that administrative segregation is not a psych unit, although "there are people with mental problems in custody that are housed in [that unit.]"

After discussing the jury's note with the prosecutor and defense counsel off the record, the court sent the following written response to the jury: "The defendant is not 'being held in a psych unit.' You're not to consider anything that is not in evidence, including the defendant's custodial status."

The next day, defense counsel objected to the court's response and moved for a mistrial. Counsel asserted that the trial court's response had impermissibly introduced extrinsic evidence, namely, that appellant was not being held in a psych unit. Seemingly in contradiction to his objection, counsel asked the court to clarify to the jury that appellant was being held "in administrative segregation alone in a single cell." The court overruled the objection, noting that defense counsel had acceded to the proposed answer before the response was sent.

The trial court also denied the motion for a mistrial, stating: "I think one of the main reasons why the Court has quite a bit less concern than what would have been apparent is in the actual statement read to the Court on the question, they did specifically indicate that the jurors felt that they were

5

capable of setting aside the statement and not using it against the defense. Or against anyone. [¶] So that gives some alleviation to the Court with regards to any prejudice to either side with regards to the statement and that I—and in connection with the response the Court gave and their own response that the Court doesn't believe that there's any prejudice to either party based on the jury's ability to set it aside and listen to the instructions by the Court."

The jury reached its verdict, finding appellant guilty of robbery and attempted robbery.

### b. *The Trial Court Appropriately Addressed the Jury's Note*

Appellant asserts that the trial court erred in failing to interview individual jurors to determine whether any of them were affected by the deputy's statement that appellant was a "mental person" being held in a "psych unit." He claims the statement constituted extrinsic evidence that was potentially prejudicial, arguing the jury "may have been afraid that if appellant was a 'mental case,' the failure to convict him would turn loose a dangerous person capable of committing more violent attacks." He also contends that the court's response to the jury's note exacerbated the misconduct because the response introduced facts that were outside the record while simultaneously directing the jury not to consider anything that was not in evidence, thus leaving open the possibility the jury might still believe that appellant was being held in a psych unit.

### i. *Applicable Legal Principals*

" 'An accused has a constitutional right to a trial by an impartial jury. [Citations.] An impartial jury is one in which no member has been improperly influenced [citations] and every member is " 'capable and willing

6

to decide the case solely on the evidence before it.' " ' " (*People v. Hensley* (2014) 59 Cal.4th 788, 824.)

A juror's receipt of information about a party or the case that is not a part of the evidence received at trial is misconduct that raises a presumption of prejudice, even if such information was received passively or involuntarily. (*People v. Cowan* (2010) 50 Cal.4th 401, 507 (*Cowan*).)  The trial court has a duty to investigate when it becomes aware of the possibility a juror has committed misconduct or has been exposed to improper influences.  (*People v. Linton* (2013) 56 Cal.4th 1146, 1213.)  The court must make whatever inquiry is reasonably necessary to determine whether to discharge the juror and whether the impartiality of other jurors has been affected.  (*Ibid.*; *People v. Davis* (1995) 10 Cal.4th 463, 535.)

"However, ' "not every incident involving a juror's conduct requires or warrants further investigation." ' " (*Cowan, supra*, 50 Cal.4th at p. 506; see *People v. Williams* (2013) 58 Cal.4th 197, 290 (*Williams*).)  " ' " 'The decision whether to investigate the possibility of juror bias, incompetence, or misconduct—like the ultimate decision to retain or discharge a juror—rests within the sound discretion of the trial court.  [Citation.]  The court does not abuse its discretion simply because it fails to investigate any and all new information obtained about a juror during trial.' "  [Citation.]  A hearing is required only where the court possesses information which, if proved to be true, would constitute "good cause" to doubt a juror's ability to perform his or her duties and would justify his or her removal from the case.' " (*Williams*, at pp. 289–290.)

### ii. Discussion

We conclude the trial court took reasonable measures to investigate and address the misconduct.  The jury note made clear that the jurors had

been exposed to extrinsic information from the sheriff's deputy about appellant's custodial status that might bear upon his mental health. The trial court called the deputy sheriff to testify concerning what information he had specifically conveyed to the jury. Although the jury had already stated in its note that it was prepared to ignore this information, the trial court's written response—crafted in consultation with both counsel—informed the jurors that appellant was not "being held in a psych unit" and they were not to consider anything that is not in evidence, including defendant's custodial status.

The court was justifiably reassured that the jury would follow its instructions and acted within its discretion in deciding not to interview individual jurors. The jury note reflected that the jurors themselves had recognized that the deputy's remarks were inappropriate, and they had taken the initiative to discuss the matter and confirm that the information would not influence their deliberations. There was no information that would cast doubt on the jury's ability to remain impartial, and therefore no good cause basis for further investigation into the matter. (*Williams, supra,* 58 Cal.4th at pp. 289–291.)

We also disagree with appellant's assertion that the trial court's response to the jury was confusing or inconsistent. The trial court concluded that it was more important to correct the false impression that appellant was being housed in a "psych unit" than to leave the remark unaddressed and risk the possibility that the jury might find the statement to be true. At the same time, the court reminded the jury that it was not to consider evidence outside the record, including appellant's custodial status. Under the circumstances, the trial court struck an appropriate balance between

8

correcting an inaccuracy and reminding the jury of its obligations.  We find the court's actions reasonable, and certainly not an abuse of discretion.[3]

### iii.  Any Error Was Harmless

Even if the trial court erred in its handling of the jury note, we find that the error is harmless.  Appellant contends the deputy's "psych unit" statement was "intrinsically prejudicial" because it fatally tainted the jury.  He further asserts the error is subject to automatic reversal as a structural defect.  We disagree with both contentions.

"[O]nly a 'very limited class of cases' are subject to per se reversal." (*People v. Aranda* (2012) 55 Cal.4th 342, 363 (*Aranda*), quoting *Johnson v. United States* (1997) 520 U.S. 461, 468.)  Most errors "are ' "trial error[s]," ' occurring 'during the presentation of the case to the jury.'  [Citation]  They are amenable to harmless error review because they can be 'quantitatively assessed in the context of other evidence presented in order to determine whether [their] admission was harmless beyond a reasonable doubt.' [Citation.]  'Structural defects,' on the other hand, 'defy analysis by "harmless-error" standards' [citation] because they are not 'simply an error in

---

[3] To the extent a "presumption of prejudice" has been raised by the misconduct in this matter, we conclude there is no reasonable probability of prejudice.  (See *In re Hamilton* (1999) 20 Cal.4th 273, 296 ["Any presumption of prejudice is rebutted, and the verdict will not be disturbed, if the entire record in the particular case, including the nature of the misconduct or other event, and the surrounding circumstances, indicates there is no reasonable probability of prejudice, i.e., no *substantial likelihood* that one or more jurors were actually biased against the defendant."].)  As discussed above, appellant has not pointed to any evidence in the record indicating actual bias by the jury or an inability to follow the court's instructions and remain impartial. On the contrary, the jury brought the matter to the court's attention, assured the court that it could ignore the extrinsic information, and raised no further concerns with the court's written response, indicating it understood and applied the court's instructions.

the trial process,' but rather an error 'affecting the framework within which the trial proceeds.' " (*Aranda,* at pp. 363–364, quoting *Arizona v. Fulminante* (1991) 499 U.S. 279.)

Here, even if the deputy sheriff's statement to the jury introduced extrinsic evidence of appellant's mental health status that was potentially inflammatory, this affected only the information received by the jury, which is an error amenable to assessment in light of the other evidence presented. That the misconduct occurred during deliberations, rather than during the presentation of evidence, is of no consequence. The deputy's remark constituted "an error in the trial process," and is readily distinguishable from errors that have been viewed as structural, such as "denial of counsel or of self-representation, racial discrimination in jury selection, and trial before a biased judge." (*Aranda, supra,* 54 Cal.4th at p. 364.)

Nor does appellant demonstrate that any error was prejudicial under either *Chapman v. California* (1967) 386 U.S. 18, 24 [harmless beyond a reasonable doubt standard] or *People v. Watson* (1956) 46 Cal.2d 818, 836 [reasonable probability that the error did not affect the outcome standard]. "[W]hen misconduct involves the receipt of information from extraneous sources, the effect of such receipt is judged by a review of the entire record, and may be found to be nonprejudicial. The verdict will be set aside only if there appears a substantial likelihood of juror bias. Such bias can appear in two different ways. First, we will find bias if the extraneous material, judged objectively, is inherently and substantially likely to have influenced the juror. [Citations.] Second, we look to the nature of the misconduct and the surrounding circumstances to determine whether it is substantially likely the juror was actually biased against the defendant. [Citation.] The judgment

10

must be set aside if the court finds prejudice under either test." (*In re Carpenter* (1995) 9 Cal.4th 634, 653 (*Carpenter*).)

We conclude that the deputy sheriff's statement about appellant being "kind of a mental person" who is housed in the "psych unit" was clearly misguided but not so inherently prejudicial that it fatally tainted the jury's view of appellant. The statement itself does not suggest that appellant is violent or has harmed others, and the jury assured the court that it could continue deliberating in an impartial manner.

Additionally, nothing in the surrounding circumstances demonstrates that the deputy's statement resulted in actual bias. The jury did not seek out this prohibited information. Rather, the offhand statement was offered in response to an unrelated question about the cutoff time for jury deliberations, and the jury promptly informed the court about the deputy's statement. (See *Carpenter*, *supra*, 9 Cal.4th at p. 656 ["But to the extent [juror's inadvertent receipt of outside information] was misconduct, it was also *passive*" and was not indicative of actual bias].) Moreover, the jury was admonished by the trial court that the deputy's statement was inaccurate and that the jury was not to consider appellant's custodial status. We presume jurors followed the trial court's instructions. (*People v. Sanchez* (2001) 26 Cal.4th 834, 852.) The admonition was sufficient to cure any potential prejudice. (*People v. Price* (1991) 1 Cal.4th 324, 428.) "It is only in the exceptional case that 'the improper subject matter is of such a character that its effect . . . cannot be removed by the court's admonitions.' " (*People v. Allen* (1978) 77 Cal.App.3d 924, 935.)

Appellant argues the deputy's statements were prejudicial because they raised the specter of turning loose a dangerous, mentally ill person if the jury did not return guilty verdicts. The cases appellant relies upon in support of

his claim of prejudicial error, however, are distinguishable because they address prosecutorial misconduct in cases involving a defense of not guilty by reason of insanity. For example, in *People v. Mallette* (1940) 39 Cal.App.2d 294, 299, the prosecutor argued at the sanity phase that "it is a theory of our law that an insane person cannot commit a crime, so the crime requires the operation of a sane mind, and therefore [the defendant] will walk out free if you find she was insane at the time of the commission of the offense." The appellate court reversed the defendant's conviction, holding it was prejudicial misconduct to suggest that the criminally insane, however violent, are immediately set free to prey upon society. (*Id.* at pp. 299–300.) Similarly, in *People v. Modesto* (1967) 66 Cal.2d 695, disapproved on another ground in *Maine v. Superior Court* (1968) 68 Cal.2d 375, 383, fn. 8, our Supreme Court called it "obvious misconduct" for the prosecution, in reference to a defendant's plea of not guilty by reason of insanity, to tell the jury "that, if the defendant were found insane at the time he committed the offense, he would be 'turned loose' " (*Modesto,* at p. 708.) This appeal involves neither a claim of prosecutorial misconduct nor a defense of not guilty by reason of insanity. And as noted above, the deputy sheriff's statement makes no mention of appellant being turned loose or of his propensity for violence. In short, we conclude that any error in the trial court's handling of the misconduct was harmless under any standard because there is no substantial likelihood that any juror was actually biased against appellant.

### c. *The Denial of the Motion for Mistrial Was Not an Abuse of Discretion*

For the same reasons, we conclude that the trial court did not abuse its discretion in denying appellant's motion for a mistrial. Appellant makes no showing that the deputy's comment violated his due process rights or irreparably damaged his chances of receiving a fair trial. (See *People v.*

12

*Bolden* (2002) 29 Cal.4th 515, 555 [mistrial denied based on brief reference to defendant's parole status; no due process violation].)

"A court should grant a mistrial ' "only when a party's chances of receiving a fair trial have been irreparably damaged." ' [Citation.] This generally occurs when ' " ' "the court is apprised of prejudice that it judges incurable by admonition or instruction." ' " ' " (*People v. Johnson* (2018) 6 Cal.5th 541, 581.) "Whether a particular incident is incurably prejudicial is by its nature a speculative matter, and the trial court is vested with considerable discretion in ruling on mistrial motions." (*People v. Haskett* (1982) 30 Cal.3d 841, 854; see *People v. Dement* (2011) 53 Cal.4th 1, 39–40, disapproved on another point in *People v. Rangel* (2016) 62 Cal.4th 1192, 1216.) " 'Juries often hear unsolicited and inadmissible comments and in order for trials to proceed without constant mistrial, it is axiomatic the prejudicial effect of these comments may be corrected by judicial admonishment; absent evidence to the contrary the error is deemed cured.' " (*People v. McNally* (2015) 236 Cal.App.4th 1419, 1428–1429.) "We review the trial court's refusal to grant a mistrial for abuse of discretion." (*Johnson,* at p. 581.)

As discussed above, any prejudice resulting from the deputy sheriff's misguided comment that appellant was being held in a "psych unit" was cured by the trial court's admonishment to the jury that it should disregard any information regarding appellant's custodial status and base its deliberations solely on the evidence presented at trial. Because any potential for prejudice had been abated, the court did not err in denying appellant's motion for mistrial.

## II. The Trial Court Did Not Abuse Its Discretion in Denying Appellant's *Romero* Motion

### a. *Background*

Appellant was charged with having suffered two prior strike convictions. The first stemmed from a 1990 robbery conviction in which appellant robbed a taxicab driver at gunpoint and shot at the taxi as it drove away. He was sentenced to four years in state prison. The second strike was a result of a 2005 federal bank robbery conviction. In that case, appellant held a bank teller at gunpoint and threatened to kill her unless she turned over the money in her drawer. He escaped with $2,265. He pleaded guilty and was sentenced to 81 months in federal prison.

Before sentencing, appellant filed a *Romero* motion, inviting the court to exercise its discretion to strike (or dismiss) both of his prior strike convictions. (*Romero, supra,* 13 Cal.4th 497; § 1385, subd. (a).) He argued that he did not have an extensive criminal history because the two strikes were his only convictions. He also stressed that the convictions were remote in time, were, in part, attributable to an undiagnosed mental health condition, and that the offenses did not result in serious bodily injury. He also noted he faced a long sentence even if the court exercised its discretion to strike the priors. The prosecution opposed the motion, noting that appellant had suffered several other arrests for violent and assaultive crimes. Additionally, he had committed multiple assaults on corrections officers while in custody on the present matter, and his future prospects were poor.

After reviewing the pleadings and hearing argument, the trial court elected to strike appellant's 1990 conviction for armed robbery and dismiss the associated five-year prior (§ 667, subd. (a)), while retaining the 2005 federal bank robbery conviction as a strike for sentencing purposes. The court concluded that appellant fell outside the spirit of the Three Strike law,

14

but only in part.  The court observed that the 1990 strike was almost 30 years old and occurred when appellant was just 19 years old, circumstances that weighed in favor of dismissing that conviction.  In contrast, appellant was a mature adult of 34 years at the time of the bank robbery in 2005, and he committed the present offense in 2016 when he was 45 years old.  While the court declined to dismiss the 2005 felony strike conviction, the court noted appellant did not use a weapon in the commission of the current offense and agreed he did not cause injury to either of the victims in the prior cases, although Lu did suffer a minor injury in the present case.  The court also found that his criminal conduct was partially excusable due to his mental health condition, while also noting that he had consistently refused treatment, medication, or any assistance to address his mental health issues.

Following its analysis, the trial court sentenced appellant to 17 years in state prison, comprised of the upper term of five years on count one, doubled to 10 years due to the 2005 prior strike (§ 667, subds. (d) & (e)), a consecutive terms of one year on count four, doubled to two years (*ibid*.), and a consecutive five-year term imposed for the 2005 prior serious felony conviction.  (§ 667, subd. (a)(1).)  Sentencing on counts two and three was stayed pursuant to section 654.  Appellant was also sentenced to one year in county jail on count five, with credit for time served.

On appeal, appellant claims the trial court abused its discretion in failing to dismiss the 2005 prior strike conviction.  We find no abuse of discretion.

### b.    *Analysis*

A trial court has the discretion to grant a motion to dismiss a strike allegation.  (§ 1385, subd. (a); *People v. Williams* (1998) 17 Cal.4th 148, 162.)  In deciding whether to exercise that discretion, the court is to " 'consider

whether, in light of the nature and circumstances of [the defendant's] present felonies and prior serious and/or violent felony convictions, and the particulars of his background, character, and prospects, the defendant may be deemed outside the [Three Strikes] scheme's spirit, in whole or in part, and hence should be treated as though he had not previously been convicted of one or more serious and/or violent felonies.' " (*People v. Carmony* (2004) 33 Cal.4th 367, 377 (*Carmony*).)

We review a trial court's denial of such a motion for an abuse of discretion. (*Carmony, supra,* 33 Cal.4th at p. 373.) Where the record demonstrates that the trial court balanced the relevant factors and reached an impartial decision in conformity with the spirit of the law, we shall affirm the court's ruling, even if we might have ruled differently in the first instance. (*People v. Myers* (1999) 69 Cal.App.4th 305, 310 (*Myers*).)

We conclude the trial court did not abuse its discretion in denying appellant's *Romero* motion. The court applied the correct legal standard, fairly considered appellant's arguments, and thoughtfully exercised its discretion in partially denying the motion.

Appellant urges us to reverse the trial court because it did not give sufficient weight to several ameliorative factors, including that the 2005 strike conviction was remote in time, that none of his prior offenses resulted in serious injuries, that no weapon was used in the current offense, and that his mental illness significantly contributed the instant proceedings. He also asserts that all the factors that the trial court relied upon to strike his 1990 robbery conviction should have been applied to strike the 2005 conviction. Because the trial court considered all of these factors, appellant is essentially asking us to reweigh the factors and come to a different conclusion. This we cannot do. (*Myers, supra,* 69 Cal.App.4th at pp. 309–310 ["It is not enough to

16

show that reasonable people might disagree about whether to strike one or more of [a defendant's] prior convictions."].)

Appellant also cites to *People v. Banks* (1997) 59 Cal.App.4th 20, *In re Saldana* (1997) 57 Cal.App.4th 620, and *People v. Bishop* (1997) 56 Cal.App.4th 1245. But all three cases are distinguishable: *Banks* reversed the denial of a motion to strike because the trial court misunderstood that it had discretion to grant relief (*Banks,* at pp. 23–24), and *Saldana* and *Bishop* affirmed the grant of a motion to strike (*Saldana,* at pp. 626–627; *Bishop,* at pp. 1248–1251). If anything, these cases emphasize the limited nature of our review when a trial court exercises its discretion. Given those limits, we have no basis to disturb the court's ruling in this case.

## DISPOSITION

The judgment is affirmed.

_____
Sanchez, J.

WE CONCUR:


_____
Margulies, Acting P.J.


_____
Banke, J.


*A157331  People v. Black*

18