[Crim. No. 2117. In Bank.—August 10, 1918.]

## THE PEOPLE, Respondent, v. URBAN R. LAWSON, Appellant.

CRIMINAL LAW—APPEAL—ORDER DENYING MOTION IN ARREST OF JUDGMENT—ADJUDICATION OF SANITY—NONAPPEALABLE ORDERS.—In a criminal action, an appeal does not lie from an order denying a motion in arrest of judgment, or from an adjudication of sanity made before judgment.

ID.—SANITY OF DEFENDANT—TRIAL AFTER CONVICTION OF CRIME—OBJECT OF PROCEEDING.—The sole object of the proceeding under sections 1191, 1367 et seq. of the Penal Code to have the sanity of a defendant tried by a jury after his conviction of the offense charged and before judgment, is to determine, not whether he was insane at the time of the commission of the crime, but whether he was insane when arraigned for judgment.

ID.—EVIDENCE—BURDEN OF PROOF.—In a proceeding under sections 1191, 1367 et seq. of the Penal Code to have the sanity of a defendant tried by a jury after conviction of the crime charged and before judgment, it is incumbent on the defendant to show by a preponderance of evidence that his mind was in such condition that he did not rightfully comprehend his own condition with reference to the proceedings against him, and that he was then unable to present in a rational manner any defense.

ID.—NUMBER OF JURORS ESSENTIAL TO VERDICT—INSTRUCTION.—In a proceeding to have the sanity of a defendant determined, it is needless to determine as to the correctness of an instruction to the effect that three-fourths of the jury might render a verdict, where the record shows that the verdict was concurred in by all of the twelve jurors.

ID.—PEREMPTORY CHALLENGES—CODE SECTIONS INAPPLICABLE.—Proceedings to determine the sanity of a defendant are special proceedings of a civil nature, and the provisions of the Penal Code relating to the formation of trial juries in criminal cases and as to the number of peremptory challenges have no application.

ID.—TEST OF SANITY—INSTRUCTION.—In a proceeding to determine the sanity of a defendant after conviction and before judgment, an instruction that the verdict of guilty established beyond question the sanity of the defendant at the time of the commission of the crime is inapplicable, but without prejudice, where the jury was also instructed that the test was the present mental condition of the defendant.

ID.—DEFENSE OF INSANITY—CAUTIOUS EXAMINATION BY JURY—INSTRUCTION.—An instruction that a defense of insanity should be examined

with great care is applicable in a proceeding to determine the sanity of a defendant after verdict and before judgment.

ID.—UNLAWFUL ACT—PRESUMPTION OF UNLAWFUL INTENT—INSTRUCTION.—An instruction that it is a presumption of law that an unlawful act was done with an unlawful intent is inapplicable in a proceeding to determine the sanity of a defendant, but without prejudice, being a mere abstract statement of law.

ID.—EVIDENCE OF DEFENDANT ADMISSIBLE.—In a proceeding to determine the sanity of a defendant after conviction and before judgment, evidence given by the defendant on the trial is admissible.

APPEAL from a judgment of the Superior Court of Alameda County, and from an order denying a new trial. F. B. Ogden, Judge.

The facts are stated in the opinion of the court.

Benjamin F. Wulff, and Karl F. Kennedy, for Appellant.

U. S. Webb, Attorney-General, and John H. Riordan, Deputy Attorney-General, for Respondent.

ANGELLOTTI, C. J.—The defendant was convicted of murder in the first degree. His motion for a new trial was subsequently denied as also was a motion in arrest of judgment. Upon being arraigned for judgment it was suggested that he was then insane and that judgment should, therefore, be deferred. The trial court ordered the question of his sanity tried (Pen. Code, secs. 1201, 1368–1370), and a trial by jury was had. The jury returned a verdict finding him to be sane, whereupon judgment of death was pronounced. Defendant appeals from the judgment, the order denying his motion for a new trial, the order denying his motion in arrest of judgment, and the adjudication of sanity made before judgment. No appeal lies from either of the last two orders.

Upon the trial for murder, the defense of insanity was not interposed. Apparently there was no suggestion that defendant was not sane, and the defense was that the homicide was committed either in self-defense or under such circumstances as to be excusable as a homicide committed by accident and misfortune. The principal claim on this appeal in so far as the conviction is concerned is that the

evidence was insufficient to support the verdict of guilty. A careful examination of the record forces us to the conclusion that this claim cannot be held to be well based, and that we have here simply the ordinary case of a conflict in the evidence which has been resolved against the defendant by jury and trial judge. The evidence of Mrs. Margaret Wood is not of such a nature that it can be rejected by an appellate tribunal as being untrue. It furnishes sufficient legal support for the conclusion of the jury. The claim of appellant in this connection really is that her testimony was so thoroughly discredited as to certain parts and was so inherently improbable as to other parts, that it should be disregarded. In the light of the record we cannot say that her testimony as to what occurred at the time of the fatal encounter was inherently improbable, and it should be needless to say that the question of the weight to be accorded this evidence was one solely for the jury and trial judge.

The verdict was rendered October 3, 1917. At the request of defendant's counsel October 5, 1917, was fixed as the time for judgment. At this time defendant made a motion for a new trial on various grounds, including that of newly discovered evidence, and asked for ten days in which to prepare and present affidavits as to this ground. After considerable discussion the court allowed defendant six days for this purpose, continuing the hearing to October 11th. In so doing the court substantially stated that any application for a further continuance would receive consideration at that time. On the last-named date, when the matter came on for further hearing, no request whatever for further continuance was made, and there was no suggestion that further time was desired to procure any affidavits. Neither on that day nor before was there any suggestion as to the name of any witness who would give newly discovered evidence, or the nature of any such evidence. Counsel for defendant stated that they had no affidavits to present, and the motion was submitted for decision. It is now claimed that the court erred to the prejudice of defendant in granting only six days instead of ten within which to present his motion for a new trial. Under the circumstances it is clear that in the absence of any request for a further continuance on October 11, 1917, defendant cannot be heard to complain of the action of the trial court in this regard.

On October 19, 1917, after the verdict of sanity, here-inafter discussed, was rendered, the trial court again made an order denying the motion for new trial. The suggestion of counsel, made after the making of this order, to the effect that he could produce, if given the opportunity, newly discovered evidence going to the question of the sanity of defendant at the time of the commission of the crime, was not accompanied by any affidavit whatever, and the trial court was not called upon to pay any attention whatever thereto.

On October 5, 1917, after the making of the motion for a new trial, on the mere suggestion of counsel for defendant that there was some doubt as to the present sanity of the defendant, the trial court ordered the question of his sanity to be submitted to a jury. (Pen. Code, secs. 1191, 1368 et seq.) The record is somewhat uncertain as to whether it was the opinion of the court that there was doubt as to defendant's sanity, but we will assume that this was so in view of its order. The court fixed October 8, 1917, for the commencement of the insanity hearing, and on that day the trial was commenced. On October 19, 1917, the trial was concluded, the jury rendering a verdict that defendant was sane. Thereupon the motion in arrest of judgment was denied, and judgment pronounced. Many errors are alleged in connection with this insanity investigation.

It may properly be stated at the outset that the sole object of this proceeding, in view of our law, was to determine not whether the defendant was insane at the time of the commission of the crime of which he had been convicted, but whether, when arraigned for judgment, he was then insane, within the meaning of our statute providing that "a person cannot be tried, adjudged to punishment, or punished for a public offense, while he is insane" (Pen. Code, sec. 1367), and further, that "if . . . when defendant is brought up 'for judgment on conviction a doubt arises as to the sanity of the defendant, the court must order the question as to his sanity to be submitted to a jury; and the . . . pronouncing of the judgment must be suspended until the question is determined by their verdict." (Pen. Code, sec. 1368.) By subsequent sections it is provided that if the jury finds him insane, the judgment must be suspended "until he becomes sane," the defendant committed to a state hospital until that time, and that when he becomes sane he shall be brought to

judgment. (Pen. Code, secs. 1370, 1372.) If the jury finds him to be sane, judgment must be pronounced. (Pen. Code, sec. 1371.) As is shown in *In re Buchanan*, 129 Cal. 330, [50 L. R. A. 378, 61 Pac. 1120], these provisions are simply a statutory affirmation of common-law rules forbidding proceedings against one who is mentally deranged to such an extent as to be incapable of appreciating his situation and making any legal defense that he may have. In the case just cited this court approved the test declared in *Freeman* v. *People*, 4 Denio (N. Y.), 9, [47 Am. Dec. 216], as follows: "If, therefore, a person arraigned for a crime is capable of understanding the nature and object of the proceedings against him; if he rightly comprehends his own condition in reference to such proceedings and can conduct his defense in a rational manner, he is, for the purpose of being tried (or, as here, for the purposes of judgment) to be deemed sane, although on some other subjects his mind may be deranged or unsound."

Complaint is made that the trial court refused to allow counsel for defendant sufficient opportunity to procure evidence as to defendant's mental condition. As we have said, on October 5th the court fixed October 8th for the commencement of the insanity trial, and the trial was not concluded until October 19th. We have read most carefully the record of this trial, and believe it plainly apparent therefrom that every reasonable opportunity was given counsel to make good by proof his suggestions that defendant was insane. It is perfectly apparent from the record that the attitude of the learned trial judge was such that at no time during the trial would he have refused to give counsel an opportunity to produce any substantial evidence bearing on the question of the defendant's then mental capacity, if a proper showing of the existence of such evidence was made. We say this notwithstanding a cursory remark of the judge in one of the numerous colloquies with counsel to the effect that "it is true, we cannot send east and get it" (evidence). At no time was there any proper showing of the existence of any such evidence on the part of anyone outside of the state, which could be obtained. The full extent to which counsel went in this behalf was to exhibit a telegram received from the superintendent of the insane asylum at Madison, Indiana, in response to an inquiry sent him by counsel on

October 6th, saying: "Lawson defective beyond doubt, unable to give full statement from memory. You consult prison authorities Michigan City." This statement fell far short of being one to the effect that Lawson's mind was in such a condition that he could be held to be insane within the meaning of the laws declaring an insane person incapable of committing crime, and precluding the pronouncing of judgment upon an insane person. No formal application for the taking of the testimony of the superintendent was made to the court, nor was there at any time any application for a continuance based upon affidavit, upon the ground that if a continuance was granted, any specified testimony could probably be obtained. It was quite apparent that counsel had no knowledge of any expert witness who would give evidence favorable to defendant upon the issue to be submitted, and that he was simply groping in the dark, hoping that something might some time be found to assist the defendant. We have no disposition to criticise counsel for his earnest effort to indefinitely postpone execution of the judgment, but we are satisfied that there was no error in the action of the trial court in this regard.

The evidence on the question of insanity was amply sufficient to support the conclusion that the defendant was sane, within the meaning of the law applicable. That he was not perfectly poised mentally may be freely conceded. Such, however, is not the test. There was no substantial showing to the effect that his mind was in such a condition that he did not rightly comprehend his own condition with reference to the proceedings against him, that he had been convicted of a crime punishable by death and was before the court for the purposes of judgment on that conviction, or that he was then unable to present in a rational manner any defense that he might have either on motion for new trial or to the pronouncing of judgment. Under the well-settled rule in this state it was incumbent on the defense to show this by a preponderance of evidence. The burden of proof was upon him.

On the oral argument complaint was made of the instruction given to the jury to the effect that three-fourths of the jury might render a verdict in such a proceeding as this. It is needless to determine as to the correctness of this in-

struction in view of the fact that the record affirmatively shows that the verdict was concurred in by all of the twelve jurors.

The trial court refused to allow defendant more than four peremptory challenges in impaneling a jury for the insanity investigation. Based upon the provision of the Penal Code relating to the formation of trial juries in criminal cases, it is claimed that the defendant was entitled to twenty peremptory challenges, section 1070 providing as follows: "If the offense charged be punishable with death, or with imprisonment in the state prison for life, the defendant is entitled to twenty and the state to ten peremptory challenges. On a trial for any other offense, the defendant is entitled to ten and the state to five peremptory challenges." Manifestly these sections have reference solely to trials for criminal offenses, by which the question of the guilt or innocence of a party charged with a public offense is to be determined. The proceeding here did not in any way involve the question of the guilt or innocence of the defendant of a criminal offense. That question had been determined on the trial which had resulted in a verdict of guilty. In this proceeding insanity could not be set up as a defense to the charge of murder, but could be urged solely as a reason why further proceedings on the verdict should be stayed pending a restoration to sanity. The proceedings provided by the Penal Code for the determination of the question of present sanity in order to determine whether a defendant possesses sufficient mental capacity to be tried, or having been tried and convicted, to be adjudged to punishment (sec. 1367 et seq.), or having been adjudged to suffer death, is sane within the meaning of our law precluding execution of such a judgment upon an insane person (Pen. Code, sec. 1221 et seq.), are special proceedings of a civil nature. They simply provide a lawful method by which it may be ascertained whether the defendant in a criminal cause is so afflicted mentally that the proceedings against him shall be suspended until he is in condition to be tried, or adjudged to punishment or executed. The sole object is to determine his present mental status. Is he now an insane person? Such an investigation has none of the elements of a criminal proceeding. The legislature has seen fit to provide that when such a question sufficiently arises with reference to a

defendant in a criminal proceeding, it shall be submitted
to ''a jury'' for determination, and the criminal proceed-
ing arrested until a determination is had.  This investiga-
tion is entirely collateral to the criminal proceeding.  There
is nothing in the provisions relative thereto that makes ap-
plicable the provisions of the sections of the Penal Code
relative to the formation of juries for the trial of persons on
charges of having committed a crime, and we are satisfied
that they have no application.

As to certain rulings of the trial court, counsel have con-
tented themselves with simply stating in their brief that the
court' erred, without giving any reason whatever for the
claim.  We have examined the record as to these and find no
warrant for holding that prejudicial error was committed
in any of these' rulings.  This observation refers to the
alleged errors of law numbered II, III, IV, and X.

Having first clearly and at some length correctly instructed
the jury that the issue before them was not whether the de-
fendant was insane at the time of the commission of the
alleged crime, but whether he was now insane, and as to what
constituted the test of insanity by which they were to be
governed, the court went on to tell them what the standard
of responsibility would have been on the trial for murder,
ending this portion of the charge by saying: ''When a ver-
dict of guilty is rendered against a defendant charged with
crime, such verdict establishes beyond question, so far ·as
these proceedings are concerned, the sanity of the defendant
at the time of the commission of the acts charged against
him.  And the test for your guidance here is as first above
stated.''  The statement as to what would have been the
standard of responsibility on the trial for murder was, of
course, inapplicable in the investigation then being had, but
we cannot see that it could have been prejudicial.  The jury
were plainly enough told that such was not the test by which
they were to be governed.  The concluding sentence of the
portion quoted clearly enough referred to the proper test
fully, accurately, and emphatically stated, and there could
have been no misunderstanding on the part of the jury as to
that.  The remainder of the quoted portion, if taken as
meaning that *in determining the question of present sanity*
the jury must accept it as established by the verdict that the
defendant was in fact sane at the time of the commission

of the alleged crime, was, of course, incorrect. The verdict of guilty proved nothing at all in so far as the issue of insanity to be determined by this jury was concerned. It is clear from the context that the court did not intend any such meaning, but that, having stated the standard of responsibility that would have existed on the trial for murder if the defense of insanity had been made, was simply explaining that this jury had nothing to do with that question, i. e., the question whether the defendant was not gulity of the offense of which he had been convicted by reason of insanity, as the question of his guilt or innocence was settled by the verdict on the murder trial. Consideration of the instructions bearing on this matter has satisfied us that the jury could not have been misled by the language we have quoted into failing to give due weight to evidence offered by defendant and admitted by the court to show insanity prior to the commission of the crime, or into regarding the verdict on the murder trial as evidence of defendant's sanity at that time.

The instruction that a plea of insanity was sometimes resorted to in cases where aggravated crimes have been committed under circumstances which render hopeless all other means of evading punishment, and that while such a defense ought to be viewed as a full bar to punishment after conviction when satisfactorily established, it should be examined with great care lest an ingenious counterfeit of the malady furnish protection to guilt, is a cautionary instruction that has been constantly given on trials for criminal offenses in this state, and it has never been held to be cause for reversal. It was equally applicable in this proceeding.

The instruction that "it is a presumption of law that an unlawful act was done with an unlawful intent" had no proper place in the charge, but it was a mere abstract statement of law that could not have been prejudicial to the defendant.

We are unable to attribute to the question asked by the trial judge of Mr. Murphy, a witness for the defendant, as to the apparent attitude of the defendant regarding the shooting, any prejudicial effect whatever. The same is true as to certain observations by the trial court in colloquies with counsel as to the manner in which counsel for defendant had conducted the case on the trial, and one that "there

were times when he [defendant] would show animation in what was going on; put his elbows on the table and look at the jury; apparently be sane entirely." The jury were emphatically instructed that if the judge in colloquy with counsel had suggested that certain facts exist or have been proven, they should disregard such suggestions, and be governed solely by the evidence actually introduced, and there is nothing in the circumstances to warrant us in concluding that the jury may have been in any degree influenced by any statement by the trial judge to counsel.

The evidence given by the defendant on the trial was admissible in evidence on this proceeding as tending to show his mental condition at the time of the trial, a matter material to the question of his present sanity. The objections made by defendant to this go solely to the question of the weight to be accorded to the same.

There is no other matter requiring discussion. We have examined the whole record and find nothing indicating that defendant did not have a fair trial on the question of his present sanity.

The judgment and order denying a new trial are affirmed. The other appeals are dismissed.

Shaw, J., Sloss, J., Wilbur, J., Richards, J., *pro tem.*, Lorigan, J., and Melvin, J., concurred.