[Criminal No. 872. Filed February 20, 1939.]

[87 Pac. (2d) 266.]

ARCHIE LEE SHORT, *Alias* JAMES BAILEY, Appellant, v. STATE OF ARIZONA, Respondent.

Mr. H. G. Richardson, for Appellant.

Mr. Joe Conway, Attorney General, and Mr. W. E. Polley and Mr. Charles Bernstein, Assistant Attorneys General, for Respondent.

ROSS, C. J.—From a sentence of death by lethal gas, for the crime of murder, Archie Lee Short, *alias* James Bailey, has appealed.

The evidence shows that on the 7th day of June, 1938, appellant was confined in the Arizona State Prison, at Florence; that on that date, in company with four other convicts, who were working at the prison farm, he overpowered the guards and escaped; that in so doing the appellant severely wounded with a knife Joe Lazar, one of the prison guards, and in the escape the appellant and the four other convicts took two revolvers and one Winchester rifle from the guards. Following the escape, a general alarm was sent out and a statewide search was made for the appellant and the other escaped convicts. The next evening (June 8th) appellant was seen upon the streets of Ray, Arizona, by the deceased Jack Hickox, who was then and there a deputy sheriff and who had knowledge of the appellant's and the other convicts' escape, and who was at the time seeking to apprehend the appellant and take him into custody. According to appellant's written confession, while he was in the town of Ray looking for an automobile to escape in, the deceased came onto him and told him he had better drop his gun or he would kill him; that the officer had his gun half way out of the holster and appellant said ''Don't pull that out or I will shoot you. . . . There was only one thing for me to do.'' This version of what happened immediately at and before the shooting is not corroborated by any of the eyewitnesses but the testimony of such witnesses is to the effect that neither deceased nor appellant spoke a word before the shooting. According to their testimony, before the deceased had an opportunity to fire, or to remove the gun from its holster, appellant shot deceased in the head and killed him. The appellant fired several shots at the officers, who were attempting to assist the deceased in apprehending appellant, but missed his aim. The appellant was later found at an old mill near the town of Ray

and surrendered to the officers without further struggle.

The appellant did not take the witness stand nor offer any evidence in his own behalf, relying solely upon his written confession, introduced in evidence by the state, and the evidence of eyewitnesses to the homicide to the effect that the appellant shot the deceased while the deceased had his hand on his gun in an effort to remove it from its holster.

 Appellant assigns the admission of evidence of the escape on June 7th as error, contending the escape and the circumstances thereof had no connection with the homicide committed on June 8th, but it occurs to us that it had much to do with appellant's action the following day. Without such evidence, there would appear no reason for the homicide, no reason why deceased attempted to arrest appellant and no reason why appellant resisted the deceased officer. In *Carter* v. *State,* 18 Ariz. 369, 373, 161 Pac. 878, 879, where the facts were similar, we said:

" . . . Prior circumstances of difficulties, under the general rule governing the trial of homicidal cases, are inadmissible, one of the reasons being that the accused does not forfeit his right to defend himself against an assault because he has been guilty of a wrongful act in the past. But the rule has important exceptions, and is not to obtain where faults, which, although not occurring at the precise time of the homicide, but previously, may have been so closely connected with it in time and circumstances as to be fairly regarded as operating to bring it on. A learned author says:

" 'In order for evidence of previous quarrels or of particular acts which constitute no part of the *res gestae* to be admissible against the defendant, it must not be a separate, distinct and independent act, but there must be some link of association, something which draws together the preceding and subsequent

acts, something which gives color of cause and effect to the transaction, and sheds light upon the motive of the parties.' Michie Homicide, vol. 1, p. 790.''

We think the evidence was highly proper to explain why deceased attempted to arrest appellant and also to show appellant's motive in resisting arrest. *Lawrence* v. *State,* 29 Ariz. 247, 240 Pac. 863. It tended to show that the reason he shot the officer was to make good his escape and prevent his return to the prison.

██ The question of the sufficiency of the evidence to support a verdict for first degree murder was one for the jury, as was also the question as to whether appellant was justified in shooting the officer in self-defense. Both these questions were passed upon by the jury adversely to appellant and, we are satisfied, correctly so.

██ At the time appellant was brought into court for sentence, his counsel filed a motion, and some affidavits in support thereof, suggesting the appellant was at that time insane, and asked the court to submit the question of his sanity to a special jury, which was denied. This ruling is assigned as error. The authority for such a proceeding is found in section 5197, Revised Code of 1928, reading as follows:

"§ 5197. *Insane person not to be tried; doubt as to sanity suspends trial.* A person can not be tried, convicted or punished for a public offense while he is insane. When an action is called for trial, or at any time during the trial, or when the defendant is brought up for judgment on conviction, if a doubt arise as to the sanity of the defendant, the court must order the question as to his sanity to be submitted to a jury, and the trial or pronouncement of the judgment must be suspended until the question is determined by their verdict. When the doubt arises during the trial, the trial jury may be discharged or retained, according to the discretion of the court, during the pendency of the issue of insanity.''

Under this section, if the court had any doubt as to appellant's sanity, he should not have been sentenced. When the motion was made, the court had had the opportunity to observe the appellant and his conduct during the trial and to determine for itself whether the appellant was capable of assisting his counsel in making his defense and of understanding the proceedings. In *Fralick* v. *State,* 25 Ariz. 4, 9, 212 Pac. 377, 379, we discussed the above statute, and the cases pertinent thereunder from other states, and said:

"It will be noted that the statute, and decisions thereunder, contemplate that the doubt of the defendant's sanity may arise either from the court's own observation or from evidentiary facts presented to the court. When the question is raised by motion, as was done in this case, the court must weigh and consider all the relevant facts bearing thereon, whether offered to sustain the proposition of insanity or in opposition thereto. If it appear that the effort is made merely for the purpose of avoiding or delaying the trial on the merits, or that defendant is feigning insanity, or if the showing is not from credible sources and substantial, it, in all probability, will fall short of arousing any doubt in the mind of the court."

We also quoted from *State* v. *Peterson,* 24 Mont. 81, 60 Pac. 809, as follows:

"The question whether a doubt exists is one that addresses itself peculiarly to the sound discretion of the trial court. To it must be presented the reasons for asking that such an inquiry be had, or of its own motion the court may institute the investigation, and to its sound judgment is left the decision of the wisdom of having it."

The record shows the court went fully and carefully into the question of appellant's sanity and heard evidence offered by the appellant and also by the state concerning his sanity and thereafter said:

" . . . If there is a question or doubt in the Court's mind, the Court should submit the question to a jury trial. This, to the Court is always a very unpleasant task, throughout a trial of this character. There is no question in the Court's mind but that this defendant comes from a good family. There may be some insanity in the family. The Court does not doubt what was said about the boy's father. On the other hand, from my observation in this case, from the testimony presented, there is no doubt in my mind but that the defendant is sane, and I could not legally submit that question to a jury unless a doubt did arise. My observation of the defendant and of his conduct, both during the trial of the case proper and during this proceeding, and the testimony of the witnesses, all pointed to the sanity of the defendant under any legal test. . . . "

In *Fralick* v. *State, supra,* we held that the court, without any previous opportunity of observation, could not arbitrarily and capriciously ignore the suggestion of a defendant's insanity when supported by a showing tending to support the suggestion; but that is not this case. As we have seen, the court observed appellant throughout his trial and, in addition, upon a suggestion that he was insane when arraigned for sentence, made a full investigation to determine if its opinion of appellant's sanity, obtained by observation, was entirely justified, and whether or not the court should entertain after such an investigation any doubt as to his sanity. Thereafter, in the exercise of a fair and reasonable discretion based upon all the facts and circumstances, no doubt having been created or having arisen in the court's mind, the motion to submit the question to a jury was denied. 8 Cal. Jur. 195, sec. 270.

██ The appellant complains that the court erred in the course of its investigation of appellant's claim of insanity in reading a report on appellant's sanity made by B. M. Berger, M. D., Superintendent of the

Arizona State Hospital for the Insane. It appears that such report was read by the court to determine if the hearing should be suspended and appellant be given time to subpoena Doctor Berger as a witness. After reading the report, the court offered to suspend the hearing and secure the attendance of the doctor as a witness if appellant desired it. Counsel for appellant then concluded that he did not want the doctor and so stated. He now says appellant was entitled to have the doctor in court and to confront him. The report was not introduced in evidence nor in any way used in a trial, but if it had been, the rule of confrontation applies only to criminal cases. An investigation as to a defendant's sanity under section 5197 et seq., *supra*, "has none of the elements of a criminal proceeding." *People* v. *Lawson*, 178 Cal. 722, 174 Pac. 885, 889. The court expressly stated, however, that it did not consider the doctor's report one way or the other in connection with its ruling on the question of appellant's sanity.

We have considered all of the actions and rulings of the trial court complained of, and have come to the conclusion that such actions and rulings were not erroneous, and that the plaintiff had a fair and impartial trial.

The judgment is affirmed.

LOCKWOOD and McALISTER, JJ., concur.